Matter of G.A. v E.P. (2007 NY Slip Op 51920(U))

[*1]

Matter of G.A. v E.P.

2007 NY Slip Op 51920(U) [17 Misc 3d 1111(A)]

Decided on October 4, 2007

Family Court, Onondaga County

Hanuszczak, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on October 4, 2007

Family Court, Onondaga County
In the Matter of G.A.,
Petitioner
against
E.P., Respondent
F-06663-02/06G

Lawrence P. Brown, Esq. for petitioner; Vincent J. Finocchio, Esq., for respondent.

Michael L. Hanuszczak, J.
On June 12, 2007, the attorney for the petitioner filed an Objection to the
Decision/Order, filed and entered on May 8, 2007 in which the petitioner's application for an
upward modification of the current support order was dismissed with prejudice. An Affidavit of
Service has been filed with the Court, indicating proper service of the Objection upon the
attorney for the respondent. On September 9, 2007, the petitioner transmitted a facsimile to the
Court which was not considered by the Court as it was an ex parte communication and
also as there is no provision in the Family Court Act for submissions after an objection has been
filed.
After a review of the Objection, the case file, and the audio recording of the support hearing,
the Court issued an Interim Order on July 6, 2007 and remanded the matter to the Support
Magistrate for the limited purpose of hearing the following testimony and proofs:
1.The birth dates and ages of the children for whom the respondent pays child support under
a previous court order;
2.A copy of a valid court order, and any separation agreement upon which the order is based,
requiring the respondent to pay child support.
3.Competent proof that the respondent pays child support in accordance with the aforesaid
order.
4.A copy of the respondent's 2006 New York State tax return.
5.Competent proof on whether the respondent owns his residence at [redacted], New York
and competent proof that the respondent makes any payments for rent/mortgage on that residence
or receives any income from said residence.
The remand hearing was conducted on September 6, 2007, and this Court has reviewed the
audiotape of that hearing and the documents which were introduced by the attorney for the [*2]respondent and marked as Interim Order Exhibits by the Support
Magistrate.
BACKGROUND
On November 3,
2006, the petitioner filed a petition seeking modification of the order of support dated October
28, 2003 which directed the respondent to pay the sum of $103.00 per week to the petitioner
through the Onondaga County Support Collection Unit for the support of P.G., date of birth
[redacted] 1995. The support order, which was stipulated to by the parties, stated that the basic
child support obligation was $75.00 per week with the mother's pro rata share being $12.00 per
week and the father's pro rata share being $63.00 per week. The parties agreed that the father's
support obligation would be $103.00 per week as the mother paid for child care. The parties
agreed that the father was to provide the mother with a job search log and pay stub every sixty
days commencing December 1, 2003 and the mother was to provide the father with child care
receipts every sixty days commencing December 1, 2003. The order further provided that the
mother could apply for a modification without alleging a change in circumstances other than a
change in the father's income.Appendix A, which was attached to and made a part of the support
order, contained the following Findings of Fact: (1) the mother is employed on a part-time basis
earning $13,000.00 per year at an hourly wage of between $5.00 and $10.00 per hour; (2) the
father is employed full time and his income has decreased from $74,000.00 per year to the
current amount of $20,800.00 per year or $400.00 per week plus some overtime; (3) the parties
are not in agreement as to the cause of the father's decrease in income but they stipulated for the
purpose of the order that the father's annual income will be imputed at $35,000.00 per year; (4)
the presumptively correct amount of support to be paid by the father is $63.00 per week plus a
share of the child care expenses, taking into consideration the father's order of support of $252.00
per week for children of another relationship; (5) the parties agreed that the father shall pay the
amount of $103.00 per week for child support, which includes child care expenses during the
school year of $40.00 per week; (6) the father's pro rata share of health insurance and uncovered
health care expenditures is 62% based upon an annual income $19,218.50 and the mother's share
is 38% based upon an annual income of $12,005.24.
SUMMARY OF TESTIMONY
The
attorney for the petitioner called an individual for the purpose of providing expert testimony
regarding the respondent's earning capacity. The witness testified that he is a forensic economist
with an undergraduate degree in economics, a master's degree in business administration, and a
law degree. He provided credentials showing that he has been employed as an economic
consultant since 1986, has been qualified as an expert witness by other courts, and has provided
personnel evaluation testimony in thirty-three other court appearances since 1994. The witness
stated that he is a member of the National Association of Forensic Economists and has presented
a number of papers at the annual Eastern Economic conventions. The Support Magistrate
allowed the witness' testimony but reserved the decision on his qualifications and the weight to
be assigned to his testimony. An Exhibit List prepared by the Support Magistrate indicates that
she did not receive his prepared exhibits into evidence.
The witness testified that, in preparation for his testimony, he reviewed materials provided to
him from the attorneys including the transcript of the examination before trial (EBT), the
petition, the support order, the respondent's financial affidavit, and the respondent's income tax
returns for the years 2002 through 2006. He testified that he used this material and references for
Central New York and for Maine provided by the U.S. Department of Labor to [*3]chart the respondent's range of earnings. He stated that he looked at
earnings for the jobs titled pipefitter and construction foreman based upon the respondent's
descriptions of his work as contained on the income tax returns and in the EBT. The attorney for
the respondent objected to the respondent's job being described as a pipefitter, but the attorney
for the petitioner read from a portion of the transcript of the respondent's deposition in which the
respondent stated that there is no difference between a pipefitter and a pipeliner. The Support
Magistrate overruled the objection. In a later ruling, the Support Magistrate stated that the
respondent is not a construction foreman.
The witness testified that the respondent's tax returns indicate that he had earnings of
$74,000.00 when he was employed by the L. Company in 2002 as a pipefitter, earnings of
$50,370.00 in 2003 after he became an employee of N.U., $48,150.00 in 2004, approximately
$70,000.00 in 2005, and approximately $29,000.00 in 2006. The witness testified that on some of
the tax returns the respondent is called a foreman and on some he is called a pipeliner. The
witness testified that the respondent's salary is less than the median salaries for a pipe fitter or for
a construction foreman, averaging those incomes for Central New York and two cities in Maine.
He testified that he averaged the three geographical locations since the respondent's employer has
transacted business in several locations and because the respondent resides in the Syracuse area.
He stated that the respondent's hourly wage of $15.00 per hour is lower than what is earned by
comparable employees in any of these locations.
The attorney for the petitioner called the respondent, who testified that he is 45 years old and
a high school graduate. Prior to his current employment, he worked for seven years at the L.
Company as a pipeliner. He stated that he is currently an employee of N. U., which is located in
Maine and owned and operated by his wife, and that he digs ditches, lays pipe, and plants grass.
He stated that he is a pipeliner and that at times he supervises a pipe crew of three to four other
workers. He testified that he could not remember how many days he worked as a pipeliner and
how many days he worked as a foreman. He stated that he has earned $15.00 per hour since
2005, and that he believes that one other pipe liner at the company may earn a greater hourly
wage but that he is not sure as he does not have access to the company records. He stated that his
decrease in income is the result of fewer working hours being available to him. The respondent
stated that prior to his employment at N. U. in 2002, he was a pipeliner at the L. Company. He
stated that he has not sought other employment in the last three years and that he knows that the
current support order requires him to provide job search information to the petitioner every sixty
days. He stated, "neither of us did what the order said."
The respondent testified that he and his wife filed joint income tax returns in 2003 and 2004
and that in 2005 he began filing an individual, head-of household return. He stated that he lives
in a home which he owns in [redacted], New York and that his wife lives in a home in Maine. He
testified that he and his wife are not estranged and there are no plans to legally separate or to
divorce.
The respondent testified that is responsible by a judgment of divorce for the support of the
three children from his previous marriage. He testified that the children are 24, 22, and 18 years
of age and that he pays $252.00 per week for their support. He stated he has no plans to attempt
to modify the support order. The witness testified that he has two children with his current wife, a
nine-year-old stepchild and a three-year-old child of the marriage. On cross-examination, the
respondent admitted that he is under no court order to support either of the [*4]children. In his direct testimony, the respondent stated that the
three-year-old child stays with the child's mother or stays with the child's grandmother.The
attorney for the petitioner called his client, who testified that she has received her GED and that
in the past she has been employed as a baby sitter on a part-time basis at $7.50 per hour, but that
she ceased work on March 20, 2007. She stated that she currently supports herself and her
children on the child support that she receives from her children's fathers. She stated that she will
not work during the day until she believes it is safe for her youngest child to be left with a child
care provider at about 5 years of age. She stated that on May 12, 2007, she will begin working on
the night shift caring for an adult earning $7.50 per hour for approximately 24 hours per week.
She stated that she is not a certified nursing assistant. She stated that her sister will watch the
children at an expense of $40.00 per week when she begins her job. She admitted that she
stopped paying for child care on March 20, 2007 and that over a six-week period the father has
paid $240.00 in child support for child care that was not needed. She stated that she stopped
providing the father with child care receipts as required by the support order when the respondent
did not send her a copy of his job search log.
At the conclusion of the petitioner's case, her attorney moved to conform the pleadings to the
proof. He argued that the respondent is underemployed with an ability to earn more income based
on
his work history and that the expert testimony shows that the respondent is earning
less money at his wife's company than employees in comparable jobs.
The attorney for the respondent declined to call any witnesses and moved to dismiss the
petition arguing that there was no proof of the allegation in the petition that the respondent is
earning more money than was stipulated to in the prior order.
SUPPORT MAGISTRATE DECISION AND
ORDER
The Support Magistrate found that the petitioner had not demonstrated
that the respondent earns more money than what is stated in the previous order or that the
respondent has the ability to earn more. The Support Magistrate dismissed the petition with
prejudice in an order dated May 5, 2007.
PETITIONER'S OBJECTION
On June
12, 2007, the attorney for the petitioner filed "Objections to Order of Support Magistrate,"
making the following arguments: (1) the expert witness based his testimony that the respondent
was a construction foreman and a pipefitter based upon the respondent's tax returns and his
deposition; (2) there is no basis in the record for the Support Magistrate's finding that there is a
difference between a foreman and a construction foreman; and (3) it was error to disregard the
testimony of the expert witness since the facts of the case show that the respondent works for his
wife's company and that his salary is set by her. The attorney for the petitioner requests that the
Support Magistrate's decision be overturned, that an annual salary of $49,240.00 be imputed to
the respondent as a foreman, and the child support amount be recalculated.
On May 31, 2007, subsequent to the filing of the Objection, the petitioner filed a
pro-se petition for an upward modification of the 2003 child support order. She alleged
that the child has grown older and she now has greater expenses. On June 26, 2007, the
respondent filed a pro-se petition for a downward modification of the 2003 support order.
He alleged that his annual income has decreased to approximately $30,000.00. Since the petitions
referred to issues [*5]which were currently under review by a
Family Court judge in the Objections process, the Support Magistrate recused herself and the
matters were transferred to another Support Magistrate, who has adjourned the matters until such
time as the instant Objection has been decided.
FINDINGS AND CONCLUSIONS
A
parent seeking the modification of a child support obligation has the burden of establishing that
there has been a change in circumstances warranting a change in the support obligation.
(Cadwell v. Cadwell, 294 AD2d 434) An improvement in a parent's financial condition
will constitute a change in circumstances sufficient to warrant an upward modification. (Carr
v. Carr, 309 AD2d 1001) In the 2003 support order, the parties stipulated that the mother
could apply for a modification without alleging a change in circumstances other than a change in
the father's income.
This Court finds that the petitioner met her burden of showing that there has been a change
in circumstances warranting a modification of the support order and that the petition is
conformed to the proofs adduced at the hearing: the respondent's income as defined in the Child
Support Standards Act (CSSA) has increased as he is no longer eligible to deduct from his gross
income child support paid for two children from a previous marriage, as explained in the
following paragraphs.
New York State law allows for the deduction of child support actually paid pursuant to court
order on behalf of any child for whom the parent has a legal duty of support and who is not a
subject child in the instant proceeding. (Fam. Ct. Act § 413(1)(b)(5)(vii)(D).)
The parties' 2003 support order contains Findings of Fact and a calculation of the child
support obligation in which the respondent's annual stipulated income of $35,000.00 per year is
decreased by $252.00 per week ($13,104.00 per year) in consideration of another order of
support for which the respondent was obligated. In the instant proceeding, the respondent
testified that he paid $252.00 per week in child support for his three children from a previous
marriage. He also testified that two of these three children were now over the age of 21 years and
that he had no plans to attempt to modify the support order.
Under ordinary circumstances, a child is considered to be emancipated at age 21 under New
York State law, and the support obligation expires as a matter of law, as stated by the attorney for
the petitioner and the Support Magistrate. However, there was insufficient information for this
Court to determine if these children were emancipated, and in its Interim Order this Court
requested that a copy of the support order be provided by the respondent. The respondent
provided a copy of the Judgment of Divorce, dated November 21, 2001, which incorporated and
did not merge the Separation/Opting Out Agreement, dated March 14, 1995. This document was
marked as Interim Order Exhibit 1 and is received into evidence with no objection to its receipt.
The divorce decree states that there are three children of the marriage and their dates of birth
are [redacted] 1981, [redacted] 1983, and [redacted] 1988. The decree also states that the child
support provisions as contained in the 1995 Separation/Opting Out Agreement (the Agreement)
are in compliance with the Child Support Standards Act guidelines. Article V of the Agreement
states that income of the husband is approximately $49,000.00 per year, the income of the wife is
approximately $22,000.00 per year, there are three minor children of the marriage, and that the
applicable child support percentage for three children is 29%. The Agreement states [*6]that the husband's weekly proportionate share of the presumptively
correct amount of basic child support for the three children under the CSSA is $252.00 per week
plus 68% of child care and uncovered medical expenses. The Agreement explicitly states that a
child is considered emancipated after the twenty-second birthday even if the child is engaged in
post-secondary education.
This Court takes judicial notice of the ages of the children from the respondent's previous
marriage and that their ages as of the commencement date of the instant petition on November 3,
2006 are 24 years, 22 years, and 18 years. This Court concludes that the respondent's obligation
to provide support to two of these children has expired as a matter of law.
As a part of its Interim Order, this Court requested that the respondent provide competent
proof that he was actually paying $252.00 per week in support for the children of his previous
marriage. Interim Order Exhibit 2, which is a notarized statement dated August 29, 2007 from
the respondent's former wife, states that he pays $252.00 per week for the support of the three
children. On Objection by the petitioner's attorney, this Court will not receive this Exhibit into
evidence. The respondent testified that he has no receipts or other proof showing that he has
actually paid this amount of support.Therefore, this Court finds that the petitioner has met her
burden of proof for an upward modification of the support order. The Court will calculate the
support obligation as there is sufficient information in the record to do so and in the interest of
giving the parties some sense of finality about their respective support obligations. The Court is
also mindful that these parties have filed five
support petitions since the 2003 support order, many of which have been dismissed
or withdrawn and two of which are outstanding.
With respect to the calculation of child support, New York State law requires each parent to
provide a fair and reasonable amount of support for his or her minor children within financial
guidelines set by statute and based upon an analysis of the financial resources of the parents.
(Fam. Ct. Act § 413.) It is well-settled that child
support is determined by the parent's ability to provide for the child rather than the parent's
current economic situation. (Crosby v. Hickey, 289 AD2d 1013, quoting Zwick v.
Kulhan, 226 AD2d 734) Finally, it is proper for the Court to impute income based upon the
parent's earning capacity when there is evidence that the parent is underemployed. (Zwick v.
Kulhan, 226 AD2d 734)
For the purposes of the child support calculation, this Court will impute an annual income of
$15,000.00 per year to the petitioner. This amount was determined by the petitioner's testimony
that she has a GED, that she has earned $7.50 per hour as a part-time babysitter in the recent past,
that she will commence employment as a part-time caregiver to adults on May 12, 2007 for $7.50
per hour, and that her 2006 tax return, which was attached to her sworn financial affidavit and
received into evidence, shows an income of $11,391.00. The Court takes note of the petitioner's
testimony that she does not intend to work full time until her youngest child reaches the age of
five years; nevertheless, this Court will impute full-time income to the petitioner for the purposes
of calculating the support obligation owed by each of the parents. As the petitioner is the
custodial parent of the subject child, she will not be obligated to pay her pro-rated amount of
support to anyone; however, her imputed income will establish her fair share of child support
add-ons such as child care and uncovered medical expenses. The Court also notes that the
petitioner admitted that the respondent overpaid the sum of $240.00 to her for child care
expenses.
[*7]
With respect to the respondent, this Court finds that he is
significantly underemployed in his current job. It is clear from the record that in 2003 the
petitioner stipulated to an annual income $35,000.00 for the respondent as a temporary measure
since she also stipulated that the respondent would conduct job searches and provide her with the
results and then she could apply for a support modification. Her stipulation must be considered as
a whole rather than piecemeal.
The record shows that at the time of the respondent's Separation/Opting Out Agreement in
1995, the respondent was earning approximately $49,000.00 per year. The Court reviewed the
2002 and 2003 orders, of which the Court takes judicial notice, and the respondent's tax returns
for the years 2002 through 2006, which were received into evidence. In the 2002 order, the
respondent is credited with income of approximately $73,830.00 per year; in the 2002 tax return,
$$65,230.00; in the 2003 order, an annual income of 35,000.00 is stipulated; in the 2003 tax
return, $50,370.00; in the 2004 tax return, $26,549.00; in 2005, there is no W-2 form attached to
the return that the respondent filed jointly with his wife; and in the 2006 tax return $29,235.00.
The Court notes that since 2003, the respondent has been employed by N. U., a business that
is owned by the respondent's current wife as a sole proprietorship in the state of Maine. The
record also shows that the respondent's significant decrease in earnings coincides with his
employment at his wife's business. The joint tax returns filed by the respondent and his wife
show that the business's gross income was $508,383.00 in 2004 and $856,860.00 in 2005. After
2005, the respondent and his wife began filing separate tax returns and the record is devoid of
any information on the business finances.
This Court finds the respondent's testimony concerning his earning ability is self-serving and
not credible and his wage level appears to be artificially lowered. (Fowler v. Rivera, 40
AD3d 2007) His sworn financial affidavit shows annual expenditures of $33,564.00 on an
income of $29,235.00. In addition, there is no evidence in the record that the respondent made a
good-faith effort to obtain employment at a salary which is commensurate with his experience
and qualifications, as was required by the 2003 support order. Indeed, the respondent admitted
that he had not done so. (Davis v. Davis, 197 AD2d 622) The Court need not rely on a
parent's account of his or her own finances, and the Court is empowered to impute income to
either parent based upon that parent's past income or demonstrated earning potential. (Spreitzer v. Spreitzer, 40 AD3d
840)
Although the record shows that the respondent earned approximately $74,000.00 in 2002
when he worked for the L. Company, this Court declines to impute that amount to the respondent
since the Court has no information as to how much of that amount was comprised of overtime
earnings.
The petitioner's expert witness testified that the median salary in 2005 for a construction
foreman in Central New York and two cities in Maine was $46,413.00. The witness also testified
that the median salary in these locations for a pipeliner was $42,300.00 in 2005. The witness also
testified that he would adjust those figures upward for a 3% growth rate in income for the years
2006 and 2007, although there was no testimony as to what the 2006 or 2007 earnings would be.
The Court declines to impute the expert witness' income amounts to the respondent since there
are no figures given solely for the Central New York area, which is where his income should be
compared since the respondent resides in Central New York.
The Court will impute $49,000.00 as CSSA adjusted income to the respondent, by which the
Court intends that this amount has already been reduced by FICA amounts, employee [*8]business expenses, and support for the remaining minor child of his
prior marriage. This adjusted income amount was determined using the respondent's 1995
earnings of $49,000.00 as the base upon which to add expected earnings increases from 1995 to
2005, which is the earnings year prior to the commencement date of the petition. The Court also
finds that the respondent's current job requires him to divide his duties between that of an
individual contributor (pipeliner) and that of a supervisor (crew foreman).
Based upon the imputed incomes of the parents, the basic child support calculation is as
follows.
The respondent testified that he and his wife have a three-year-old child. Based upon the
joint income tax returns for the respondent and his wife and the respondent's testimony that his
wife owns a home in Maine and he owns a home in the Syracuse area, the Court finds that there
is no indication that the resources available to support the three-year-old child are less than the
resources available to support the subject child of this petition, especially since the earnings and
the business/assets of the respondent's wife would be taken into consideration in any analysis of
the support need of the three- year-old child. Therefore, the respondent's support obligation under
the CSSA is not unjust or inappropriate. (Palmieri v. Conti, 242 AD2d 537)
Therefore, the Court finds that the respondent-father owes $160.00 per week in basic child
support for the minor child, effective upon the filing date of the petition on November 3, 2006.
The uncovered medical and dental care expenses for the child shall be apportioned between the
parties with the respondent responsible for payment of 78% and the petitioner responsible for
22%. Child care expenses which are the result of the petitioner's employment shall be shared
between the parties with the respondent responsible for payment of 78% of such expenditures
and the petitioner responsible
for 22%. If the child care expenditure covers more than one child, the petitioner must
indicate what portion of the overall amount is attributable to the subject child on the child care
receipt.
Accordingly, the petitioner's Objection is granted, and the Decision/Order, dated May 8,
2007 is vacated. The Order Modifying an Order of Support on Consent is modified as follows,
effective November 3, 2006.
ORDERED, that effective November 3, 2006, the father E. P. is to pay to
the mother G. A. through the Onondaga County Support Collection Unit, the sum of $160.00
per week by certified check or money order for the basic support of P. G., date of birth
[redacted] 1995, and such payments are to be disbursed to the mother; and it is further
ORDERED, that the Support Collection Unit shall calculate the amount of any
child support arrears owed by the father and deduct from that amount the sum of $240.00 which
the father has overpaid to the mother. The father shall pay to the mother an additional $10.00 per
week, together with the basic support, until the accumulated arrears are paid in full; and it is
further
ORDERED, that either parent shall provide health insurance coverage for the child
if such coverage becomes available at a reasonable cost; and it is further
ORDERED, that as of November 3, 2006, the father shall pay 78% and the mother
shall pay 22% of any uncovered medical or dental care expenses for the child within 30 days of
[*9]receipt by certified mail of a billing statement or receipt from
the other party. If the payment is due to a parent, the payor parent shall remit a certified check or
money order for the amount; and it is further
ORDERED, that the father shall pay 78% of reasonable child care expenditures for
the subject child associated with the mother's employment. The mother shall transmit to the
father each month, via certified mail, copies of child care receipts, and the father shall be
responsible to remit payment by certified check or money order directly to the mother within 30
days; and it is further
ORDERED, that either party shall notify the Onondaga County Support Collection
Unit as well as the party within 48 hours of any changes in the following information: residential
and mailing address; social security number; telephone number; driver's license number; name ,
address, and telephone number of the employer; any change to health insurance benefits,
including any termination of benefits, change in health insurance benefit carrier or premium, or
extent and availability of existing or new benefits; and it is further
ORDERED, that all payments payable through the Support Collection Unit be
mailed to: Onondaga County Support Collection Unit, P.O. Box 15331, Albany, New York
12212-5331; and it is further
ORDERED, that a copy of this Order is to be provided promptly by the Support
Collection Unit to the New York State Case Registry of Child Support Orders established
pursuant to Section 111-b(4-a) of the Social Services Law.
NOTE:
(1)THIS ORDER OF
CHILD SUPPORT SHALL BE ADJUSTED BY THE APPLICATION OF A COST OF LINING
ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT NO
EARLIER THAN TWENTY-FOUR (24) MONTHS AFTER THIS ORDER IS ISSUED, LAST
MODIFIED, OR LAST ADJUSTED, UPON THE REQUEST OF ANY PARTY TO THE
ORDER OR PURSUANT TO PARAGRAPH (2) BELOW. UPON APPLICATION OF A COST
OF LIVING ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT,
AN ADJUSTED ORDER SHALL BE SENT TO THE PARTIES WHO, IF THEY OBJECT TO
THE COST OF LIVING ADJUSTMENT, SHALL HAVE THIRTY-FIVE (35) DAYS FROM
THE DATE OF MAILING TO SUBMIT A WRITTEN OBJECTION. UPON THE RECEIPT
OF SUCH WRITTEN OBJECTION, THE COURT SHALL SCHEDULE A HEARING AT
WHICH THE PARTIES MAY BE PRESENT TO OFFER EVIDENCE WHICH THE COURT
SHALL CONSIDER IN ADJUSTING THE CHILD SUPPORT ORDER IN ACCORDANCE
WITH THE CHILD SUPPORT STANDARDS ACT.
(2)A RECIPIENT OF FAMILY ASSISTANCE SHALL HAVE THE CHILD
SUPPORT ORDER REVIEWED AND ADJUSTED AT THE DIRECTION OF THE SUPPORT
COLLECTION UNIT NO EARLIER THAN TWENTY-FOUR (24) MONTHS AFTER SUCH
ORDER IS ISSUED, LAST MODIFIED, OR LAST ADJUSTED WITHOUT FURTHER
APPLICATION OF ANY PARTY. ALL PARTIES WILL RECEIVE NOTICE OF
ADJUSTMENT FINDINGS.
(3)WHERE ANY PARTY FAILS TO PROVIDE, AND UPDATE ANY CHANGE,
THE SUPPORT COLLECTION WITH A CURRENT ADDRESS TO WHICH AN ADJUSTED
ORDER CAN BE SENT, AS REQUIRED BY SECTION 443 OF THE FAMILY COURT ACT,
THE SUPPORT OBLIGATION AMOUNT CONTAINED THEREIN SHALL BECOME DUE
AND OWING ON THE DATE THE FIRST PAYMENT IS DUE UNDER THE TERMS OF
THE ORDER OF [*10]SUPPORT WHICH WAS REVIEWED
AND ADJUSTED, OCCURRING ON OR AFTER THE EFFECTIVE DATE OF THE ORDER,
REGARDLESS OF WHETHER OR NOT THE PARTY HAS RECEIVED A COPY OF THE
ADJUSTED ORDER.